536 P.2d 695

**FIREMAN'S FUND INSURANCE COMPA- NY, a corporation, et al., Appellants,**

v.

**ARIZONA INSURANCE GUARANTY AS- SOCIATION, a non-profit corpo- ration, et al., Appellees.**

No. 11935–PR.

Supreme Court of Arizona, En Banc.

June 13, 1975.

Rehearing Denied July 14, 1975.

Snell & Wilmer by Mark Wilmer, Bruce Norton and Thomas J. Reilly, Phoenix, for appellants.

Stockton & Hing by Robert Ong Hing, Phoenix, for appellee Arizona Ins. Guaranty Assn.

N. Warner Lee, Former Atty. Gen., Bruce E. Babbitt, Atty. Gen. by Fred W. Stork, III, and Nicholas C. Guttilla, Phoenix, for appellee Arizona Dept. of Ins.

HAYS, Justice.

We are presented by this petition for review with the singular question of the constitutionality of legislation establishing the Arizona Insurance Guaranty Association. A.R.S. § 20–661 et seq. The opinion of the Court of Appeals, Fireman's Fund Insurance Co. v. Arizona Insurance Guaranty Ass'n, 22 Ariz.App. 453, 528 P.2d 839 (1974) is vacated.

The provision of the Arizona Constitution with which we are principally concerned reads as follows:

"Section 2. Corporations may be formed under general laws, but shall not be created by special Acts. . . ."
Ariz.Const. art. 14, § 2, A.R.S.

We note that this provision does not specify the nature of the corporation which shall not be created by special acts; no distinction is made between public corporations and private corporations. The appellees contend that the Arizona Insurance Guaranty Association is a public incorporation created to carry out a mandate of the legislature, and hence it does not fall under the constitutional provision. Despite the public good intended by the legislation, the plain, simple language of the constitution compels us to disagree. "Corporation" is

defined in article 14, section 1, of the Arizona Constitution and we find nothing there which supports the idea that the constitutional provision does not apply to public corporations.

Let us briefly examine the legislative enactment with which we are concerned. The purpose of the Arizona Insurance Guaranty Association was stated as follows in its enabling legislation:

"The purpose of this act is to provide a mechanism for the payment of covered claims under certain insurance policies to avoid excessive delay in payment and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer, to assist in the detection and prevention of insurer insolvencies, and to provide an association to assess the cost of such protection among insurers." (Laws, 1970, ch. 78, § 1)

As a condition of authority to transact business in the state of Arizona, all insurers who write fire and casualty insurance must be members of this association. A.R.S. § 20–662. It has a "plan of operation" drawn up by its members. A.R.S. § 20–665. There is a board of directors consisting of from five to nine representatives of the member companies for terms established by the plan of operation subject to the approval of the state insurance director. A.R.S. § 20–663. The board has the power to assess the members separately for the expenses of administration and for the claims resulting from the insolvency of an insurance company. A.R.S. § 20–664. Members of the board are reimbursed also from the assets. A.R.S. § 20–663.

The association is empowered to appear in, defend and appeal any action on a claim brought against the association, employ the necessary personnel, borrow necessary funds, sue and be sued, negotiate and become a party to necessary contracts and perform other necessary acts. A.R.S. § 20–664. The plan of operation establishes the procedures whereby all the powers and duties of the association will be performed including handling assets, reimbursing members of the board, filing claims and proof, and a provision for the appeal of any aggrieved member insurer to the state insurance director of any final action by the association. The association is "exempt from payment of all fees and all taxes levied by this state or any of its subdivisions." A.R.S. § 20–671. Immunity from suit is granted to everyone concerned with the business of the association. A.R.S. § 20–673.

The state insurance director has a small role to play in the affairs of the association. He approves the directors to insure fair representation and approves the plan of operation. A.R.S. § 20–663, § 20–665. He also notifies the association of the existence of an insolvent insurance company and upon the request of the board, provides the association "with a statement of the net direct written premiums of each member insurer." A.R.S. § 20–666. He may also require that the association notify the insureds of the insolvent insurer and any other interested parties of the insolvency and of their rights to proceed under this statutory provision, and may suspend or revoke the certificate of authority to transact business of a member who refuses to comply. A.R.S. § 20–666. There is no other executive control over the association.

Appellees contend that Board of Regents of the University of Arizona v. Sullivan, 45 Ariz. 245, 42 P.2d 619 (1935), supports their position that a public corporation such as the one created here does not fall within the terms of the Arizona Constitution provision dealing with corporations. Art. 14, § 2, *supra*. In the Board of Regents case, *supra*, the court said:

"The special mandate to the legislature to enact laws for those educational institutions is rather convincing that it was not intended that the legislature should be restricted to the passing of general laws for the incorporation of such institutions, but that it might, as it did, incorporate the same by special act." 45 Ariz. at 256–57, 42 P.2d at 624.

 There is no provision in the constitution regarding insurance comparable to article 11, section 2, of the Arizona Constitution, which authorizes the legislature to provide for educational institutions by law. Board of Regents, *supra*, does not support appellees' position. We have held that the insurance industry is affected by the public interest and that the state, by legislation, may regulate and control it. Employers' Liability Assurance Corp. v. Frost, 48 Ariz. 402, 62 P.2d 320 (1936). However, this does not serve as a basis for the creation of a corporation by a special act.

It has been carefully pointed out to us that A.R.S. § 20–661 et seq. is a model act which has been enacted into law in some forty states. The Supreme Court of Florida in O'Malley v. Florida Insurance Guaranty Ass'n, 257 So.2d 9 (Fla.1971) upheld the constitutionality of this law under their constitution. Florida Constitution, art. III, § 11(a)(12), provides:

> "There shall be no special law or general law of local application pertaining to:
>
> *   *   *   *   *   *
>
> "(12) private incorporation or grant of privilege to a private corporation."

Obviously the foregoing bears little resemblance to our constitutional provision; hence, we do not feel constrained to give it weight under our law.

We of course do not question the authority of the legislature to create boards, commissions, departments, and agencies to carry out public purposes. Our statutes are replete with a variety of governmental agencies with wide differences in their organizational structures and functions. In each instance the agency is "governed and controlled by public officials." Board of Regents, *supra*.

 The worthy objectives sought by the legislature can be attained through normal governmental structure and without doing violence to the constitution. Courts are unwilling to declare legislative acts unconstitutional unless it is clearly shown that the fundamental law has been violated. Board of Regents, *supra*. We hold that the act creating the Arizona Insurance Guaranty Association is unconstitutional.

The judgment of the trial court is reversed.

CAMERON, C. J., STRUCKMEYER, V. C. J., and LOCKWOOD and HOLOHAN, JJ., concur.